Good morning, Your Honours. I'm Geoffrey Baird, representing Mr. Wyles. Mr. Wyles is seeking disability benefits based on mental impairments, and in particular based on the clinical findings and opinions offered by an examining psychiatrist, Dr. Washburn. In April of 2002, Dr. Washburn examined Mr. Wyles and took careful history and concluded that this was a bipolar case, probably, and several other problems going on. Dr. Washburn noted difficulties with claimant's credibility, and taking all of that together, he determined that Mr. Wyles could not tolerate work stresses in an ordinary work environment. He rated that severe. Let me get to a question that I have. If we were to accept your argument with respect to the consideration of Dr. Washburn and assume for a moment that the administrative law judge did not give appropriate reasons, and so therefore we're left with this treating physician who made the statements that you just mentioned and some later, should we send it back, or should this be credited as true? And this, as you know, is the real nub of these cases in the circuit, so I would appreciate your comments on that. I have asked that the case be paid based on crediting Dr. Washburn's opinions as true. This is because he made the opinions, well, three times, and the administrative law judge was given a second chance to evaluate those opinions with a remand, but ALJ did not. In fact, he gave great weight to the findings of Dr. Washburn. Mr. Baird, may I interrupt you for just a second? Yes, sir. Dr. Washburn in 2002 twice, and then again in 2007, says that Mr. Wiles is impaired, but that he will improve should he take medication because of bipolar disorder. Now, the medication which he could take, and did take, lithium at one time, evens out the moods from manic and depressive. Some bipolar patients don't like to take that medication because their highs are worth their lows. Now, are we in the situation of saying that because Mr. Wiles does not want to take his lithium, he is disabled? Because Dr. Washburn says that if he is medicated, he will stabilize, and year after year after year, Mr. Wiles does not follow Dr. Washburn's suggestion and does not take his medication. But Dr. Washburn said the medication regime would take about a year to become effective. In 2002. That's a 12-month period of disability. And then in 2002, he says it again, and then in 2007, he says it again. Mr. Wiles doesn't want to take his medication, does he? Well, he did take lithium and trazodone. Trazodone for sleep. Lithium for maintenance of manic depressive syndrome, now called bipolar disorder. Right. But Dr. Washburn did say the meditative regime would not be instantaneous, that if Mr. Wiles did follow it, it would take a minimum of a year, a maximum of a year. So is it your position that you're only asking for a year's disability payments? I'm asking for the 18 months, definitely pay, because that would be from April 2002, although the claimant didn't take the medication before Washburn's second examination. We don't know for sure how the meditative regime would have worked had he done it. But Dr. Washburn's speculation, well, not speculation, his professional opinion was it takes a minimum of a year, a maximum of a year. And Dr. Falstrado said the same thing, in essence. That's correct. But what is the justification for the additional six months? Simply the period between April and November of 2002. I suppose you could say just one year of disability, based on Dr. Washburn's comprehensive three opinions. But the fact that the claimant didn't take it, and we don't know if he would have stabilized during that six-month period, I added that on for the 18 months. But the duration requirement is 12 months, and that seems to be met in the statement of Dr. Washburn in his professional opinion, even with medication. He had a condition which wouldn't get better for 12 months, even if he took his medication, but then would get better, according to Washburn and Falstrado. So what you're saying is you want benefits for 12 to 18 months, period. That is the argument I've made. My colleagues who gave me the case have said, please argue for additional remand for further proceedings in light of these findings. And I will ask for that. But I think the strongest argument is for the 18 months based on Dr. Washburn. Wait, wait, wait. So if we remanded it for further proceedings, you want 12 to 18 months plus a remand? Or you want us to forget the crediting and say, well, go back and have another shot, because the ALJ didn't really take into account Dr. Washburn? You're calling me on the carpet, Your Honor. I'm going to have to make a choice here. Well, I just want to know what you want. We want to know what you want. I'm saying we're going to give it to you. 18 months. 18 months based on crediting as true. Now, I gave a long jurisprudential analysis of crediting as true. I did the best I could. It's a complicated area of Ninth Circuit law. I have to say crediting appears to be discretionary, because sometimes it's applied, sometimes not. Also, in the Harmon decision, the Harmon court chose not to credit as true after going through a weighing process. But they also were evaluating the lower court remedy choice for abuse of discretion, and apparently they would have regarded it as discretionary for the lower court to credit or not. It seems crediting is rooted in the statute, I believe, in the modification provision. The analogous case is Blacknell v. Heckler, which I outlined in the brief, where the court modified a factual finding, proceeded with the analysis, and then actually affirmed. But with crediting, the typical problem is either send back for further proceedings as in the Hammock case or pay immediate benefits as in the Lester case. Thank you. I'll preserve three minutes for rebuttal. May it please the Court, Richard Morris on behalf of the Commissioner of Social Security. Your Honor, this was and is a difficult case. Mr. Wiles had not just mental impairments, but he had numerous physical impairments. He was alleging disability since 1999, and that's the period that the ALJ considered. It's also difficult because conditions such as depression and bipolar disorder are difficult to pin down in terms of limitations. The record in this case was very large. It was over 1,200 pages. And what's before you now is distilled down to one issue, and that's Dr. Washburn's opinions. And what I'd like to touch on is- Why are we forgetting Dr. Falsetto? I thought that Judge Lasnik remanded so that we consider both Washburn and Falsetto. I'm sorry. Mr. Wiles did not bring that issue forward to this Court. He did not bring it forward. We consider that issue to be waived. Falsetto, by the way, was not a physician. Falsetto was a counselor, MA, medical health professional. And I notice that Dr. or Ms. Falsetto's records are not in the record. They are not because that issue was not brought forward to this Court. I would like to touch on three things primarily. I don't believe that this Court needs to get to the issue of the remedy, of whether to credit is true or pay or whatever, because the evidence supports the ALJ's findings, number one, on rejecting Dr. Washburn's opinions, and number two, on the case as a whole, that Mr. Wiles has not established disability. Can you point in the record where the ALJ on the second remand, there was a second send-back, right? Yes. Where he evaluated Washburn's opinions as to the petitioner's psychological and personality disorder limitations? In SCR page 41 and 42 is where the ALJ addressed Dr. Washburn's first two opinions, bottom of 41. And then at the top of 42, where he states that he gives great weight for the following reasons. And then SCR 46 is where he addresses Dr. Washburn's third opinion. But, you know, sometimes these have different numbers because they're in the record more than once. So would you just tell me the name of the document you're reading from? I'm referring to the Administrative Law Judge's decision. The decision. All right. And I think that would be page 18 of 20 of the decision. As to Washburn in 2007? That is correct. And as to Washburn in 2002? That would be pages 13 and 14 of the Administrative Law Judge's decision. Admittedly, the ALJ did not say the specific words, I reject a part of Dr. Washburn's decision. But it needs to be read in context, keeping in mind this is a large ALJ decision. There are 20 pages here, larger than most, a lot of medical evidence, a lot of things to review. When you read what he said about Dr. Washburn's decision, he gives it great weight because Washburn found that he was able to enter the workforce, and it's consistent with the opinion of Dr. Wilkinson, who had previously said that Mr. Wiles was able to do entry-level type work. And the second opinion, he stated something additional to that. That was the medication, the effective medication. Would you address what I think it ultimately narrows down to? I recognize he discussed Dr. Washburn, but on this point that he would need a year, at least a year for medicine to kick in so that he would essentially come to some level where he'd be stabilized and then could perform various of these duties, what does the ALJ say on that point?  But he did rely on the medical opinions of other doctors. There is conflicting evidence here in terms of that. Dr. Wilkinson, for instance, didn't say he needs one year to be stabilized. He said he needs medication, but he can do entry-level work. There was an orthopedist, also a Dr. Kopp, who didn't address mental impairments, admittedly, but said this person's able to do pretty much any type of work. So the ALJ did not specifically address that. Well, don't you think that's an important point here, though? I mean, that's kind of the central point is whether, given the mental issue, leaving apart the orthopedic decision, given the mental issue, the question is, does he have a mental impairment so he can't work, or can he stabilize his mental impairment so he can work? And that's the treating physician, correct? Examining physician. Examining physician. I think even more essential than that is Dr. Washburn's opinion, and according to the ALJ was not correct, that one of the things that the ALJ cited was Mr. Weil's lack of credibility, and he made that finding. Dr. Washburn, in one of his opinions, in the second one, even questioned why this was taking so long. So I think Washburn himself basically said, these are the symptoms that are being reported to me, I'll accept those, but I really wonder and question if this is all accurate. And the ALJ, as a trier of fact, is the one that gets to make that call as to whether it's credible or not. And he said, no, it's not credible. It's not credible as to what? I mean, I can understand him not being credible as to whether he can reach over and bend down and whether he can move with respect to his back disability. But on the issue of whether he has bipolar disorder, the objective manifestations of his mood swings and his anxiety and anger, there's no lack of credibility as to those symptoms, or is it? Respectfully, I disagree. Dr. Washburn, if you look at his reports where he states the limitations, the question in all three of those forms that he checked out is, what is your basis for this? Dr. Washburn states, reports anxiety and depression. So what you're saying is that Dr. Washburn's statement regarding he will stabilize if he takes his medications is conditioned on if you believe him, he will stabilize. And you say that there's conflicting evidence of whether you should believe Wiles has bipolar disorder. Mr. Wiles has bipolar disorder. The question is what are his symptoms and what limitations does he have based on the bipolar disorder? The ALJ found that bipolar disorder was a severe impairment. But the question is the symptoms. And that's where credibility comes in. With mental impairments, they're not as objectively measurable as you would with physical impairments. So that's where the credibility issue comes in. ALJ did not believe Mr. Wiles. It appears that Dr. Washburn based his reports and opinions on Mr. Wiles reporting to him of his symptoms. Therefore, ALJ did not believe or accept Dr. Washburn's opinions. What was Dr. Washburn's opinion with respect to the petitioner's psychological and personality disorder limitations? He, in all three reports, did a checkbox form where he listed the social limitations and the good example would be SCR page 151, where he lists the cognitive factors. He says ability to understand, remember, and follow complex orders, mild. And then he goes into the social factors. Those are the limitations that were the opinion of Dr. Washburn. Specifically, I'm asking about psychological and personality disorder limitations. Dr. Washburn did not specifically address limitations based on that. He addressed limitations in checking the boxes under cognitive factors and social factors. Your Honors, I'm running out of time. I would like to raise one additional issue, if I may. Mr. Wiles cites to the Blacknall case, which he purports to allow the court to fact find, in effect. And the commissioner would offer that Blacknall does not, in fact, say that. The statute states that a court may affirm, modify, or reverse the decision of the commissioner. It doesn't say that the court may fact find. I think you need to look at Blacknall. It's a 1983 case. It is a Social Security case. It's kind of standing there by itself. And in that case, the magistrate judge looked at the case, and the ALJ had found that the Social Security claimant could do light work. And the magistrate judge said, My observation is that the regulations say that if you can do light work, you can also do sedentary work. Therefore, sedentary work is it. What the magistrate judge did there was take a lesser included finding that the ALJ already had made. The magistrate judge did not make a separate finding, in fact, in that case. The neither 405G of the Social Security Act or Blacknall provide authority to modify the facts or the findings. It can modify the decision. And I think Blacknall does not stand for the position that Mr. Was claims that it does. Thank you. Thank you, Mr. Morris. Mr. Baird? Dr. Washburn conducted mental status exams, gave a mood survey, and took a history and throughout observed firsthand Mr. Wiles' demeanor, behavior, speech patterns, actions. And from that concluded he has bipolar disorder. It will take a minimum maximum of a year to treat correctly. He does express reservations about the credibility. I don't think that should be surprising with bipolar disorder. But in the end, when asked to give his professional judgment and opinion, Dr. Washburn said about a year, minimum maximum a year with treatment, to correct stabilize the bipolar disorder. He doesn't say if he has bipolar disorder, he'll take a year. He says bipolar disorder, it'll take a year. That's correct. That's his final conclusions articulated in the actual form. He gives lots of narrative, things he observed. That's especially true in, well, actually all three examinations. He investigates personally, firsthand. The claimant gives answers to questions, solves mental status puzzles. And throughout this, the doctor's observing. That's what an examining doctor would do. As regards the conflicting evidence, the only conflicting evidence is a reviewing physician. And the reviewing physicians have less inherent weight than the examining physicians. The court outlined that in the Andrews case, but also in the Lester case. The medical reviewer standing alone does not constitute substantial evidence. He has to be supported by an abundance of evidence. And the reviewing physician clearly misunderstood Washburn. For example, Washburn repeatedly says, poor auditory memory, poor auditory concentration. Which is the reviewing physician to which you mentioned? I think it's Rober. I can't remember the exact name. It's the state agency reviewing physician. I think the state agency reviewing physician made, simply misunderstood Washburn's opinion and analysis. I agree that Blacknall is an important case for my credit as true theory. I think I've read it correctly. The RFC finding was changed, and then because of that, the case was affirmed. However, there's also a nice syllogism I worked out, which was that if an ALJ has the opportunity to evaluate all of the evidence and then give the best reasons, and gives bad reasons, or says I give great weight to an opinion that establishes disability for a year, then the ALJ should be held to have found the best reasons. They are inadequate. Therefore, the opinion should be credited and the case should be paid. Thank you. Wiles versus Estrue is submitted. Thank both counsel for your argument this morning.
judges: Hawkins, McKeown, Bea